CENTRAL STATES LIFE INSURANCE COMPANY, APPELLANT, v. EMPLOYERS INDEMNITY CORPORATION, RESPONDENT.—67 S. W. (2d) 543.

Kansas City Court of Appeals. January 8, 1934.

*McAllister, Humphrey, Pew & Broaddus* for appellant.

*Cowgill & Popham* and *John F. Cook* for respondent.

SHAIN, P. J.—Central Life Insurance Company of St. Louis, Missouri, a corporation, plaintiff herein, is a duly organized and

duly authorized corporation under the laws of Missouri engaged in general old line life insurance with principal offices in St. Louis, Missouri, and the Employers Indemnity Corporation, of Kansas City, Missouri, defendant herein, is a corporation organized and existing according to the laws of Missouri, engaged in the business of writing what is known as re-insurance contracts, with its principal office in Kansas City, Missouri.

It appears from the evidence that the plaintiff issued insurance policies on the life of persons and provided therein double indemnity on condition that death occurred by certain kinds of accident. It is disclosed by the evidence that a contractual relation existed between the plaintiff and defendant, whereby defendant for a consideration of $1.20 per thousand and the compliance by plaintiff with specified conditions, re-insured plaintiff as to death by accident to the amount of excess by reason of the double indemnity clause in plaintiff's said policies.

It appears that the plaintiff on January 16, 1924, issued its policy No. 58952 to one, Alejo D. Garcia, in the sum of $10,000 in event of death, with the further provision to pay double indemnity or $20,000 in the event of accidental death as defined in said policy. It is shown that all due steps were taken by plaintiff and accepted by defendant to constitute a re-insurance as to the amount of excess if the death was caused by accidental cause under the provisions of plaintiff's policy that was issued by plaintiff to Garcia, the conditions of liability are fully set forth in the aforesaid contract between plaintiff and defendant. Virginia Ramos Garcia, wife of the insured, is made the beneficiary in the plaintiff's policy.

It is shown by the record that on April 17, 1924, Alejo D. Garcia died and suspicions were indulged concerning the cause of his death. The plaintiff was notified by letter on April 22, 1924, and formal proof of death was made on April 30, 1924, on plaintiff's blank forms.

Plaintiff notified the defendant of the death and it appears that plaintiff kept defendant informed as to information coming to plaintiff. Due to the lack of information concerning the death, the defendant by letter suggested that plaintiff send a Mr. Lake, who it is admitted was an expert in matters of insurance investigations, to make an investigation. This, the plaintiff finally did. It appears that Mr. Lake after investigating the matter made a settlement with the beneficiary for the sum of $7,000 and policy was surrendered and receipt of full acquittance given to plaintiff. The evidence discloses that Mr. Lake, who had on former occasions been employed in similar work by each of the companies, had full authority to make a final disposition and settlement as he did in this case. Mr. Lake testified that in making the settlement he acted for and on behalf of the company that sent him. It will be noted that in this case the defendant suggested to the plaintiff that it send Mr. Lake to make

investigation and that the plaintiff did send Mr. Lake and his testimony is to the effect that he acted in the matter for and on behalf of the plaintiff in making the settlement.

Two letters were sent by defendant touching the sending of Mr. Lake. The first letter contained words as follows: "It would be my *suggestion* that you send Mr. Lake to San Antonio immediately *to make investigation,* if Mr. Lake is available and you are still using him for *your investigation work.*" (Italics ours.) There appears to have been some delay in the matter and the defendant later wrote as follows: "I am sorry that *your* committee on claims does not agree as to the advisability of putting Mr. Lake on the case now as it is our view that the case is one that should have the personal attention of a man such as Mr. Lake and that since we could not afford to feel safe in closing the file until it had such *attention* and investigation." (Italics ours.)

Based upon conditions as briefly stated above, the plaintiff brings this action and seeks to recover for one-half the amount for which it settled; to-wit: For $3500, and for $346 expenses and $236.85 interest making a total of 4082.85.

Trial was by the court, jury being waived. At the conclusion of plaintiff's testimony, defendant offered and the court gave a peremptory instruction in the nature of a demurrer to plaintiff's evidence. Exception was taken by plaintiff and plaintiff took an involuntary non-suit with leave to move to set the same aside. Whereupon the court gave judgment that plaintiff take nothing and gave judgment against the plaintiff for costs.

In due time, plaintiff moved to set aside the involuntary non-suit and for new trial. The same being overruled plaintiff appeals.

### OPINION.

Plaintiff assigns as error the court's action in sustaining demurrer and compelling a non-suit and further complains at the court's refusal to set the non-suit aside.

In its brief the plaintiff submits five specifications under "Points and Authorities," as follows:

"I.

"The risk assumed is determined by the contract of reinsurance.

"II.

"In order to avoid liability unless the loss exceeds a certain amount, the contract of reinsurance must so specifically provide.

"III.

"The reinsurance contract in the instant case had no provision against liability unless and until plaintiff company had paid a certain amount. Under the facts and the terms of the contract the defendant is liable in this case.

348

## "IV.

"The contract in question was one of insurance and not of indemnity.

## "V.

"The claim settled by Mr. Lake, representing both the plaintiff and defendant herein, was a claim for $20,000, no part of which had priority over any other part and each company was liable for $10,000 of said claim."

As to plaintiff's points one (I) and four (IV) there seems to be no controversy.

The solution and answer of one question will embrace the consideration of all points presented. That question is: Was the settlement made by Mr. Lake such a settlement as attached liability on defendant under the contract of re-insurance in issue and facts shown in evidence?

Another question not germane to the final conclusion as to the merits of the issue, as presented in the above question, is raised in the briefs filed herein. This question is presented by plaintiff on a contention that it is the duty of this court to reverse this case if it is disclosed by the record that the trial court, by what plaintiff's terms were declarations of law by the court, decided the case on a wrong theory of law.

In support of its theory the plaintiff cites Faldey v. Hicks, 286 S. W. 385. In the Faldey case title to real estate burdened with the question of a life estate was involved. In that case the court gave a long declaration of law in the nature of an instruction to the court directing the court in making a finding of fact. This declaration authorized a finding for the plaintiff and disposed of the whole case and by its very meaning excluded a consideration of the evidence as to the existence of the life estate. Such a declaration, disposing of the whole case and leaving out of consideration an important issue, was clearly error.

In the case before us no finding of fact and no declarations of law were asked by either side. There appears in the printed record a running argument between counsel in which the court somewhat freely joined and gave expression of his opinion as to matters being discussed. At the close of this showing, the record proceeds:

"Thereupon, after further arguments, on the said 13th day of October, 1932, the same being the 28th day of the regular September Term, 1932, of said court, the following further proceedings were had and entered of record, to-wit:"

Thereafter and without further argument, the court rendered his judgment in the cause. This running argument is contended by plaintiff to constitute declaration of law by the court. If the claim be sustained, there is nothing that was said by the court that would

justify the application of the decision of the court in the Faldey case, supra.

We conclude, however, that what was said by the court was not a declaration of law within the meaning of that term as used by our courts.

In the Faldey case, supra, the declaration of law covering as it did the whole case there was no other theory upon which the appellate court could have sustained or rejected the judgment than that declared in the declaration, and that declaration being in error, the judgment was of course reversed. We find nothing in the record before us which gives exception to that well established doctrine in this State, to the effect, that it is the duty of an appellate court in cases where jury is waived and trial is by the court to sustain the judgment of the trial court, if for any reason disclosed in the record same should be sustained, regardless of the fact that wrong reason had been assigned.

Reverting to the real issue in this case, we set forth *in haec verba* the clauses in the re-insurance contract that the parties deem worthy to include in briefs filed.

In plaintiff's (appellant) brief is found Article 1, as follows:

''This is a reinsurance by the corporation of certain accidental death risks of the reinsured under those provisions of its life insurance policies or endorsements thereto, providing benefits in addition to the face amount of said life insurance in event of the death of the insured by accidental means. The corporation will accept and carry for the reinsured the amounts hereinafter defined under all of its policies coming within the terms, limits and conditions hereinafter set forth.

''This reinsurance shall not cover accidental death due to participation in aeronautics or military or naval service, either in time of peace or war.''

Also article 2, as follows:

''Whenever the reinsured issues its policy or renewal thereof with 'Additional Indemnity for Accidental Death' provision, . . . providing for additional indemnity for accidental death of insured, such part of the liability of the reinsured up to and including $25,000 due wholly to said double indemnity provision as the reinsured desires to reinsure, shall be automatically reinsured in the corporation subject to the provisions of Article 4 as to advices. If the reinsured desires reinsurance of such 'additional indemnity for accidental death' for more than said $25,000 in any one policy or upon any one life, such additional risk may be submitted to the corporation for its prompt consideration.''

In the plaintiff's reply brief is found paragraph 2 of article 7, as follows:

"2. Adjustments. All claims shall be adjusted by the reinsured in its own name, but the corporation shall have the right to participate in the investigation and adjustment and engages to furnish its own expense competent, special adjustor to assist the reinsured whenever requested so to do; the corporation will promptly pay to the reinsured the amount due the claimant under such adjustments and settlements upon receipt of certified copies of complete claim papers including final release."

In defendant's (respondent) brief is found article 1, paragraph 1, as follows:

"Article 1. This is a reinsurance by the corporation of certain accidental death risks of the reinsured under those provisions of its life insurance policies or endorsements thereto providing benefits in addition to the face amount of said life insurance, in event of the death of the insured by accidental means. The corporation will accept and carry for the reinsured the amounts hereinafter defined, under all of its policies coming within the terms, limits and conditions hereinafter set forth."

Also, as to paragraph 2, as follows:

". . . and reinsurance shall be subject to all of the terms and conditions of the forms of policies, or endorsements covered by this agreement, of which specimens are filed herewith and subscribed by the respective parties hereto."

Also, from article II, as follows:

"1. Amounts Reinsured. Whenever the REINSURED issued its policy or renewal thereof with 'Additional Indemnity for Accidental Death' provision, either in said policy or as an endorsement thereto, *upon any form filed herewith, or upon any like form with similar terms approved by the* CORPORATION and providing for Additional Indemnity for accidental death of the insured, such part of the liability of the Reinsured up to and including $25,000, due wholly to said Double Indemnity Provision as the Reinsured desires to reinsure, shall be automatically reinsured in the Corporation, subject to the provisions of Article IV as to advices."

Also, from article VII, as follows:

"It is expressly agreed that the corporation shall not participate in the adjustment of any claim against the reinsured on the straight life insurance provisions of its policies, but only in such claims as involve the element of accidental death of the reinsured."

We deem it to the betterment of a clear understanding of the issues presented that we include herein the double indemnity clause of the policy issued by plaintiff, which is as follows:

"The additional sum payable in event of the accidental death of the insured shall be due if the company receives due proof that such death occurred during the premium-paying period, before default in the payment of any premium, before the allowance of total and per-

manent Disability Benefits, and before attaining the age of sixty years, and that such death resulted directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental causes occurring within ninety days from the date of the accident, and that there was evidence of such accidental death by a visible contusion or wound on the exterior of body, except in the case of drowning; provided that this Double Indemnity Benefit shall not be payable if the death of the insured shall result directly or indirectly, wholly or partly from physical or mental infirmities, poison, ptomaines, bacterial infections or from any disease, from suicide or any attempt thereat while sane or insane, from any violation of law by the insured, from bodily injuries received while the insured is engaged in military or naval service, from participation in aeronautics or sub-marine operations, or from bodily injuries received outside of the continental United States.''

The proofs of death were presented as evidence limited to the effect, that contents be not considered as evidence of statements made therein.

The proofs of loss in effect state, that the insured came to his death by reason of poison forceably caused to be taken by the insured by parties unknown. In the whole record before us, there is no evidence, which can be declared to be evidence of the fact, that in any manner substantiates the fact that the insured came to his death by any means which would place any liability for double indemnity upon the plaintiff herein. It therefore follows, that if any liability rests upon the defendant herein, it must be by some provisions of the re-insurance contract placing a liability on the defendant in case of compromise and settlement conducted and concluded as shown by the evidence in this case. The above, we conclude, presents the issue before us and not the issue presented by the plaintiff as follows:

''The only question involved in this appeal is whether or not plaintiff company was required to pay out more than $10,000 before it had a right to demand reimbursement from the reinsuring company.''

We have already declared it to be our conclusion, that whether or not it be shown that the trial court came to its conclusions on the theory that no liability began until after plaintiff had paid out more than $10,000, we are not concluded thereby.

The plaintiff cites a line of cases involving the rights of the insured against the re-insurance company in case of insolvency of the company re-insuring. Also, as to respective rights of the insurance company and re-insurance company as to liability of the re-insurer after meritorious defense has been made in cases where suit was brought resulting in judgment in favor of beneficiary of the deceased insured. All these cases present prime law, but as they have no ap-

plication to the issue, as we have defined same herein, we need not comment further as to the authorities cited.

In its reply brief plaintiff cites again authority to the same effect as declared in the Faldey case discussed above.

From a careful study of the record in this case and after having eliminated issues raised in the briefs and assigned our reasons therefor, we conclude, that the case resolves itself into one in which it becomes our plain duty to determine from the record whether or not the evidence, when directed to the issue, as defined above, sustains the judgment of the lower court.

Undoubtedly, under its contract, the liability of the defendant rests only on accidental death, as provided for and only as provided for, in plaintiff's policy on the life of the insured. As there is no competent evidence shown to the effect that deceased met his death by any accident at all, then if defendant is liable, the liability must be based on some theory not specified in the contract but based upon its acts touching the settlement made by Mr. Lake.

It is well to have directly before us the provisions of the re-insurance policy touching adjustment of claims, as follows:

"2. *Adjustments.* All claims shall be adjusted by the REINSURED in its own name but the CORPORATION shall have the right to participate in the investigation and adjustment and engages to furnish at its own expense competent, special adjustor to assist the REINSURED whenever requested so to do; the corporation will promptly pay to the REINSURED the amount due the claimant under such adjustments and settlements upon receipt of certified copies of complete claim papers, including final release.

"It is expressly agreed that the CORPORATION shall not participate in the adjustment of any claim against the REINSURED on the straight life insurance provisions of its policies, but only in such claims as involve the element of accidental death reinsured."

Touching the question of liability attaching by reason of the claim in issue, as based upon defendant's conduct, we must go to the communications which passed between the parties and to the evidence of Mr. Lake. We have set forth above, the parts of the communications and the evidence of Mr. Lake that are germane to the issue. We conclude that there is no evidence in the record from which we can find that defendant in any way knew at the time of or participated in the adjustment, in and how made. At the most the evidence but discloses that defendant advised plaintiff to make investigation and indorsed Mr. Lake as a competent man to make investigation. Mr. Lake testified to the effect that he made the adjustment for and on behalf of plaintiff.

A careful study of the evidence leads the court to the conclusion that the defendant's request to plaintiff resolves itself to one for an investigation that would give it information from which to de-

termine as to its liability or non-liability, to the end of closing their file on the case.

We therefore conclude, that under the facts as presented there is nothing in the contract of re-insurance and nothing shown as to defendant's conduct which places any liability upon defendant. So concluding, we find that the record presents ample reason for us to sustain the judgment of the lower court.

An item of expense is asserted in the plaintiff's petition. There is a provision in the re-insurance contract wherein defendant agrees to pay expenses "where a claim re-insured hereunder is adjusted or litigated." As we have concluded there is presented no claim that was adjusted or litigated in accordance with the contract, we conclude no liability for expenses has been established herein.

The respondent in its brief cites a line of cases under the rule as laid down in 33 C. J., par. 747, page 61, wherein the rule is expressed that the re-insurer is entitled to avail of every defense and every objection as a party originally sued. Our conclusions reached above makes it unnecessary for us to discuss the cases cited.

For the reasons as set forth above, the judgment is affirmed. All concur.