W. E. STRATTON, APPELLANT, v. CITY OF WARRENSBURG, MISSOURI, RESPONDENT.—167 S. W. (2d) 392.

Kansas City Court of Appeals. December 14, 1942.

*H. J. Salsbury* for respondent.

*M. D. Aber* for appellant.

282

BOYER, C.—Plaintiff appeals from an adverse judgment in a suit to recover salary as street commissioner alleged to be due from defendant. The case was tried before the court without a jury. It is here by transfer from the Supreme Court, where the appeal went upon plaintiff's request, and on his theory that the Constitution of the State provided for his continuance in office. The case was there docketed as No. 37843. In transferring the appeal to this court the opinion holds that the Supreme Court had no jurisdiction for any reason appearing in the record; that defendant is not a political subdivision of the State within the meaning of the Constitution; and that the controversy does not involve a sum sufficient to confer jurisdiction.

The petition alleges that plaintiff on the 19th day of April, 1938, became the duly appointed, qualified and acting street commissioner of the City of Warrensburg for a term of one year and until his successor was appointed and qualified; that the ordinances of said city fixed the salary of said officer at the sum of $95 per month; that no amount of said salary was paid plaintiff after April, 1939, and that said salary was due and owing from the first day of May, 1939, to the 16th day of April, 1940, at which time a successor to plaintiff was appointed who thereafter qualified and assumed the duties of the office; that by virtue of the statutes and ordinances of defendant and the incumbency of his said office by plaintiff the defendant was indebted to the plaintiff in the sum of $1095.66, for which judgment was demanded.

The answer admits plaintiff's appointment and qualification as street commissioner for a term of one year ending April 18, 1939, and that the salary of said officer was $95 per month during the term of office; and for further answer defendant alleges that on the expiration of plaintiff's said term of office said office was by resolution discontinued by the city council with the approval of the mayor; that plaintiff acquiesced in said discontinuance and that thereafter he did not perform or offer to perform any of the duties appertaining to said office but accepted employment under the defendant city as an employee of the street and alley committee of the council of defendant on a month to month basis at a wage of $75 per month; that he continued in said employment until April 16, 1940, and accepted and received the sum and amount of $75 as full and complete remuneration for his said services; that plaintiff made no claim to the office of street commissioner prior to filing suit; and that having voluntarily accepted other and different employment plaintiff is estopped to claim that he was or is entitled to compensation as street commissioner for said period of time.

The answer further alleges that on the 16th day of April, 1940, the defendant by ordinance duly passed by the council and approved by the mayor re-created the office of street commissioner and appointed a suitable person to fill said office, and that said appointee duly qualified and entered upon the duties of said office.

The reply in effect denies all affirmative defense pleaded, but admits that plaintiff was employed by defendant city and was paid a wage of $75 a month and that he performed the work of an ordinary employee, and that his successor was duly appointed and qualified on April 16, 1940. The reply further sets forth plaintiff's commission as street commissioner; the resolution of the council approved by the mayor April 5, 1939, and various sections of the city ordinances, and other matters of evidence, by virtue of which plaintiff claims the right to the salary of the office, as holdover, after the expiration of his regular term to the time of the appointment of his successor.

There is evidence that plaintiff held the office of street commissioner for a period of four years and that he was appointed each year for a term of one year and commissioned as said officer for said term "or until his successor is appointed and qualified."

Plaintiff testified that near the end of his term "in the Spring of 1939, Mr. Shelton told me that he thought possibly they wouldn't appoint anybody. They had this WPA work. A WPA project was under way in the city at that time and it still continues under the same project." Mr. Shelton was the mayor. Plaintiff further said that as street commissioner he had under his control the tools of the city which were kept in buildings and that he had the keys to each building. Another city employee also had keys. He stated that when demand was made for the keys he kept them, but generally speaking the city property was turned over and used by WPA. There was no change made of the locks on the building in the Spring of 1939, but they were changed April 3, 1940. Plaintiff had access to the building during the year 1939, and until April, 1940.

On cross-examination plaintiff claimed that he had tendered a bond for a new term either to the city clerk or the mayor, or had told them that the bond was ready. Plaintiff was informed that it would not be needed; "that they wasn't going to have any street commissioner." "Q. When was the first knowledge you had that you weren't to continue on as street commissioner? A. Well, it was not definite. They told me that night they figured on doing away with street commissioner. The report came out that the city council passed a resolution abolishing the street commissioner job during WPA. Q. You did then receive immediate knowledge that the resolution had been passed? A. Yes, sir." The resolution referred to was offered in evidence and was approved by the mayor April 5, 1939. It reads as follows:

"A Resolution relating to the appointment of a street commissioner and providing that no such Officer shall be appointed during the continuation of street improvement under WPA project:

"Be It Resolved by the Council of the City of Warrensburg as follows:

"Sec. 1. That the Council deems it unwise and unnecessary to fill the office of Street Commissioner during the continuation of street improvement under the present WPA project; therefore, be it resolved that no person shall be appointed to the office of Street Commissioner until after the completion of all street work under said WPA project.

"Sec. 2. That this resolution shall be effective from and after this date, upon its passage by the council and approval by the Mayor.

"Passed by the council this 4th day of April, 1939.

"Signed R. M. SHELTON,
"Pres. of Council.

"Approved by the Mayor, this 5 day of April, 1939.

"R. M. SHELTON,
Mayor."

Under date of May 5, 1939, the mayor wrote a letter to the plaintiff in which he said:

"As I have advised you orally, the City Council has terminated the office of Street Commissioner for the length of time that the WPA project is in effect. However, you were carried to May 1 at the old salary of $95. Effective May 1, we will be glad to carry you as a regular city employee at the salary of $75 monthly until further notice."

Plaintiff claims that he did not get the letter. He said that when the proposition was made he thought they were making it $75 a month and that he told them he wanted to make as much as he could. After that he accepted employment under the chairman of the street and alley committee to whom alone he was to be responsible.

It appears that plaintiff continued as an employee of the city and accepted and received $75 a month as his compensation without complaint. There was some controversy over the last warrant that was issued to him. It was for the sum of $80, and plaintiff thought that his time was not correctly estimated. He received and cashed the warrant, but placed upon it the notation "received on account."

Plaintiff stated in effect that during the time in question he performed all the duties of street commissioner in so far as he was permitted, and that there was very little change after the adoption of the resolution in question. "The mayor seldom said anything. Sometimes they would come and ask a special favor if they needed something outside of the work for Mr. Morton." Mr. Morton was chairman of the street and alley committee, and at the time plaintiff was employed as a laborer he was informed that he was to be responsible solely to the chairman.

A co-laborer of plaintiff in the street department testified that he was employed in the street department, but was not on the streets all the time, and worked in the quarry; that plaintiff worked during 1939 and had keys and tools under his direction but not all of the time; that he and Stratton and several others had keys to the city buildings, and that he did not know that plaintiff ever claimed to be street commissioner during the year 1939. There were no other witnesses called by plaintiff. Various sections of the city ordinances and a stipulation as to certain agreed facts, similar to the facts admitted by the pleadings, completed plaintiff's evidence.

Defendant offered certain ordinance provisions, some documentary evidence, and the testimony of Mr. Cash, the city clerk, Mr. Shelton, the mayor, and Mr. Morton, a member of the council and chairman of the street and alley committee. The purport of the testimony of the city clerk is that after May, 1939, plaintiff made no reports such as the ordinance required of the street commissioner each month,

but that such reports were thereafter furnished by Mr. Morton. The first report filed by Mr. Morton showed Stratton as a street employee, the number of days employed, and his salary as $75; that plaintiff did not file a bond or oath of office. Witness stated that he paid all city employees and took receipts; that after May, 1939, plaintiff signed such receipts and made no protect and no complaint as to the amount, and that witness had no knowledge before the suit was filed that plaintiff claimed to be street commissioner after said time.

The mayor testified that he had appointed Stratton as street commissioner for his last term, and at a later date that he and other members of the city council attempted to abolish the office of street commissioner by resolution, and further said: "To my knowledge I went to Mr. Stratton and talked this matter over with him and told him what we were going to do. The only objection he made was what we were going to offer him. After that time I wrote him as to what action was taken." A copy of the mayor's letter heretofore referred to was then offered in evidence. In the summer of 1939, the mayor learned through gossip of the WPA, "or somebody said Stratton claimed to still be street commissioner." Plaintiff made no complaint to him.

Mr. Morton testified that he was employed by the city council; that he was chairman of the street and alley committee in 1939, and during that time had Stratton in his employment for the city; that he made monthly written reports covering his work during that period; that Stratton made no request to perform the duties as street commissioner, and that witness had no knowledge that plaintiff claimed to be street commissioner until "just before this suit was filed. He was supposed to have been employed directly by me during the last year. When I had anything for him to do, I gave the orders to him. He never made any complaints."

At the conclusion of the evidence both plaintiff and defendant presented and requested findings of fact and conclusions of law. Plaintiff's requested findings and conclusions were rejected and defendant's were accepted. The findings of fact made by the court on contested issues of fact include findings that the mayor wrote a letter to plaintiff advising him that the position of street commissioner had been terminated and offering to retain plaintiff on the city payroll as a regular city street employee; that after May 1, 1939, to about April 16, 1940, plaintiff performed the duties of an ordinary street employee under the direction of the street and alley committee of the city; that his duties as such employee were not the same as his duties as street commissioner; that plaintiff made no claim to any person connected with the city government that he still held the office of street commissioner; that no new bond was tendered to replace the one which expired on May 1, 1939; that plaintiff did not attempt to perform or offer to perform the duties of the street commissioner's office; that the plaintiff at no time prior to suit communicated with any member of the city

government his belief that the office was still in existence, and that there was no evidence of any action on plaintiff's part whereby he set up any claim to the office of street commissioner between May 1, 1939, and April 16, 1940; and that plaintiff abandoned the office even if it did continue in existence after the passage of the resolution.

The conclusions of law included the following:

"Where, as in this case, the person claiming the office as a holdover neither says nor does anything to apprise the appointing agency of his claim, his silence amounts to acquiescence and constitutes an abandonment of the office.

"The court finds, in this case, that by complete inaction and absolute nonclaimer for more than one year, and by accepting other employment without any complaint, plaintiff abandoned the office of street commissioner and therefore is not entitled to the emoluments of that office sued for in this action."

Defendant is an incorporated city of the third class. The city ordinances provide for the appointment and qualification and duties of a street commissioner. Section 138 of said ordinances provides that "the street commissioner shall hold his office for the term of one year and until his successor in office is duly appointed, qualified and commissioned." The last commission issued to plaintiff was on April 19, 1938, and was "for a term of one year from the date hereof or until his successor is appointed and qualified."

Charter provisions for cities of the third class contain the following:

Section 6871, Revised Statutes 1939, among other things, provides that the mayor shall have the superintending control of all the officers and affairs of the city.

Section 6875 provides for the removal of officers, and reads in part:

"The mayor may, with the consent of a majority of all the members elected to the council, remove from office any appointive officer of the city at will; and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the council, independently of the mayor's approval or recommendation."

Section 6879 provides that:

"The mayor, with the consent and approval of a majority of the members elected to the city council, shall have power to appoint a street commissioner and such other officers as he may be authorized by ordinance to appoint."

Section 6890 provides for the qualification for office by the taking of a prescribed oath and furnishing bond within a specified time and in a sum provided by ordinance, and "If any person elected or appointed to any office shall fail to take and subscribe such oath and affirmation, or to give bond as herein required, his office shall be deemed vacant.

Section 6891 provides that:

"The term 'officer,' whenever used in this article, shall include any

person holding any situation under the city government or any of its departments, with an annual salary, or for a definite term of office.''

Appellant's contentions may be summarized to the effect that plaintiff was an officer of defendant and remained so until his successor was appointed and qualified; that the office was not abolished by the resolution of the council; that a salary is an incident or appurtenant to an office and that plaintiff was entitled to salary whether or not he performed the duties of the office; and that there was no abandonment of the office by plaintiff. It is strongly urged that the resolution was wholly ineffective to repeal the ordinance creating the office of street commissioner, and that plaintiff's right to the office was not affected by it.

It appears that the office of street commissioner was one to be created by ordinance and was so created. The weight of authority seems to be that an ordinance cannot be suspended by a mere resolution or by an act of the council of less dignity than the ordinance itself. [43 C. J., p. 568, sec. 898.] Appellant's statement of the applicable rule of law in reference to the right to the salary of an office is not sufficiently comprehensive. The true rule is that the right to the compensation attached to an office is an incident to' the legal right to the office and not to the exercise of the functions of the office. [Cunio v. Franklin County, 315 Mo. 405, 285 S. W. 1007, and cases cited.]

The controlling question for determination here is not the *existence* of the office in question, but the *right or title* to said office, and whether or not under all the facts and circumstances plaintiff was possessed of such *right and title* during the period for which he claims compensation.

There is evidence to support the finding of facts made by the court upon controverted issues, and these facts, in conjunction with the admitted facts, supply a sufficient basis for the judgment in favor of defendant. The theory of the trial court is not necessarily the only legal theory that may be applied to' the facts and sustain the judgment. If the judgment was for the right party it should be affirmed even though the trial court may have assigned a wrong reason for the judgment. [Central States Life Ins. Co. v. Employers Indemnity Corporation, 228 Mo. App. 345, 349, 67 S. W. (2d) 543; Kenney v. Henson et al., 107 S. W. (2d) 947, 952, and cases cited.] Whether or not plaintiff's acts and conduct constituted legal abandonment of the office is immaterial if plaintiff was in legal effect removed from office, or if the factual situation calls for a declaration of estoppel. It is our opinion that the decision of the city council and the mayor to vacate the office of street commissioner for the time being, and the knowledge thereof on the part of plaintiff and his acquiescence therein, was in legal effect a removal of plaintiff from said office and that he so understood it. Plaintiff was subject to removal by the mayor and council *at will*. He made no claim of right to continue

as such officer, but by treaty, negotiation and consent indicated complete acquiescence in the decision of the city authorities and accepted the proposal of the mayor to take other employment. His silence in reference to any claim to the office and his actions and conduct induced the city to employ him and to pay an agreed salary during all the time for which he now seeks, in addition, the salary of street commissioner.

If plaintiff had any intention of asserting a right to the office in question he should have asserted it at the time he was informed of a discontinuance of the office. If he entertained any such intention it was deliberately concealed, and he ought not now be permitted to profit by his silence, and secret intention, calculated to mislead defendant to its detriment. Instead of asserting any claim he accepted the decision of the authorities, took employment, and received money therefor which would not otherwise have been paid. The elements of estoppel *in pais* sufficiently appear, and if necessary to sustain the judgment the rule of estoppel should be applied. [Galbreath v. The City of Moberly, 80 Mo. 484; 10 R. C. L., page 697, sec. 25; 19 American Jurisprudence, page 633, et seq.]

Appellant contends that the decision in Gracey v. St. Louis, 213 Mo. 384, is in effect controlling in his favor. It does not appear to be so. The ordinance, the issues, and the facts distinguish that case to such a degree that the rulings there made in behalf of the claimant are wholly inapplicable to the situation in the instant case. In that case an employee was summarily and illegally removed from office during a fixed term. Under the ordinances he could not be removed except *for cause,* but he was illegally displaced, and at the time claimed the right to the unexpired portion of his term. Notwithstanding this he was deprived of a clear legal right to the office in an unlawful manner, and under the circumstances the court ruled that he was entitled to compensation for the remainder of his fixed term. In the course of the opinion, page 397, the court recognized a variation in cases that would call for the application of different principles or rules of law when it said:

"There may be cases where the end of an official term is the result of negotiation and acquiescing; and cases where, standing on an equality, or where inquiry is made and response is demanded, the silence of one shows consent in what the other does; and cases of out and out abandonment amounting in effect to resignation; but the law of those cases does not concern us in this case."

Other authorities cited by appellant have been examined but they are found to be not in point, or not persuasive, or not controlling.

The conclusion in the pending appeal is that there was ample ground for the judgment of the trial court and that said judgment should be affirmed. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.