TOM GERSHON, ASSIGNEE AND TRUSTEE, RESPONDENT, v. KANSAS CITY, MISSOURI, APPELLANT.—215 S. W. 2d 771.

Kansas City Court of Appeals. Opinion delivered December 6, 1948.

*David M. Proctor, Forest W. Hanna,* and *John J. Cosgrove* for appellant.

*Marcy K. Brown, Jr.* for respondent.

DEW, J.—This is a suit brought by respondent as assignee of O. Edwin Johnson, Jr., to collect salary from the appellant claimed as unpaid for services rendered. There was a recovery of $360, plus interest of $171, a total of $531. The city has appealed.

The claimant's evident's tended to prove that during the year 1934 and up to February, 1940, he was a resident of Kansas City, Missouri; that during that time he held the official position in said city, and performed all the duties thereof, as Clerk in the Personnel Department of that city; that his duties consisted of assisting in and conducting examinations for various city positions, auditing payrolls, and general office work; that the salary of $160 a month was payable every two weeks; that "the annual budget passed by the City Council in the civil list affecting the Personnel Department carried an appropriation for claimant's salary in each fiscal year from 1934 to 1937, inclusive"; that during the period from May 1, 1934 to April 30, 1938, he did not receive all of his said salary, but that the amount of $40 was deducted from each of his semi-monthly checks received at different times during that period, or a total of $880, so unpaid; that during all the period of his services as Clerk of the Personnel Department the salary therefor, under an ordinance of the city, was $1920 a year, on which he, in good faith, relied; that there was no other claimant to his position; that during seven months in 1937 in which deductions were so made the budget ordinances of the city provided for an amount sufficient to pay the claimant's salary in full. In his petition the plaintiff alleged that the deductions were illegally made by the City Manager upon his fraudulent representation that the city revenues were insufficient to pay the salaries provided by ordinance, and that the falsity of such representations was not discovered until January 20, 1940.

Defendant offered no evidence, but admitted that the record of the Personnel Department shows that the claimant received his appointment on May 1, 1934, as a Clerk in that department at a salary of $1920 a year; that he was not carried on the regular payroll, but on the "bills payroll", up to May 1, 1939, when he was transferred to the regular payroll in the same position at the same salary; that the later appointment was temporary, and claimant resigned June 5, 1939. Although respondent is not seeking to recover for services subsequent to June 5, 1939, it was stated into the record without objection, presumably for whatever it may bear upon the claimant's proper classification under the city charter during the period of the services sued for, that after the resignation, claimant was appointed as Acting Director of the Personnel Department at a salary of $5400 a year, which position he resigned on February 16, 1940.

Without objection the city was further permitted to state into the record that the Department carried a required "Service Register", containing the names of the employees in the classified service who had successfully passed the examinations and who were therefore carried on the regular payroll after appointment, and that the claimant's name did not appear on that register. Counsel for appellant futher stated into the record, at the request of the court, and without objection, that the "bills payroll" was a "device" in use at the time in question, upon which the names were carried of employees who were not on the regular payroll or service register, and who had not taken examinations, but were appointed to a job at a regular salary; that the list was not signed by the head of the Department, but salary vouchers were issued to such persons twice a month; that some employees were in a class requiring examinations, and some were not; that some were appointed to jobs that probably did not exist by ordinance, some were irregularly appointed "and Mr. Johnson's case may be in that category". The city did not deny that claimant had performed the services claimed, and stated "In fact we think he did perform the services", and that "If he is entitled to recover he is entitled to recover $360, * * * or nothing".

It was stipulated that, of the items claimed, only the amount of $360 came within the statutes of limitations; that the Administrative Code provided for the position of Clerk of the Personnel Department; that the petition was filed February 24, 1940.

Appellant makes the points here that (1) the claimant was a *de facto* officer not *de jure*; (2) that the salary is an incident of the office, not of its occupation, or of the performance of the duties or of the individual discharging the duties; (3) that a *de facto* officer cannot recover the salary or other emoluments for services rendered in such office. In support of the contention that Johnson was not a *de jure* officer, the city argues that the City Charter then in effect divided its employees into Classified and Unclassified service; that Johnson was within the Classified service and under Division A thereof, requiring the passing of an examination before appointment; that he was never so qualified; that his name did not appear upon the "Service Register" required, but upon an unauthorized "Bills Payroll".

Respondent contends (1) that the claimant was a *de jure* officer; that his position came properly within Class B, not subject to examinations; that he possessed peculiar and exceptional qualifications of a professional character; that he could not be required to "give himself an examination", and (2) that even if he were a *de facto* officer, he was in the possession of the office without objection, discharged its duties, was accepted by the city as the incumbent, and that there was no other claimant for the office; that he is not responsible for the irregularities of the disbursing officers in their ministerial duties of paying his salary.

It will be noted that the appellant not only admits, but contends that the claimant Johnson was a *de facto* officer. It, therefore, admits that all of the conditions existed which gave him that status, among which are that he was in possession of the office, performed its duties and under a fair color of right or title to the office. 46 C. J. p. 1053, Sec. 366. The appellant also admits the acceptance of his services and the payment over the years in question of the authorized salary therefor, less the several deductions of which the claimant complained.

If it be the law that a *de facto* officer under such conditions is entitled to collect the salary provided for such office, then, of course, he, or his assignee, can recover therefor, and the question of what his rights may be if he were an officer *de jure* would become academic. We shall, therefore, first consider the rights of the claimant Johnson upon the assumption that he occupied the status of a *de facto* officer.

The law in this state on that question requires considerable study in order to understand its development and its present meaning and effect. Prior to 1916, the rule in this state was as stated in Cunio v. Franklin County, 315 Mo. 405, 285 S. W. 1007 (upon which appellant here greatly relies) that "It is a well-established principle that a salary pertaining to an office is an incident of the office itself, and not to its occupation and exercise, or to the individual discharging the duties of the office. On the other hand, it is equally well settled that, if a person exercising the functions of an office is not entitled to the office, he cannot maintain an action for his services". See, also, Sheridan v. St. Louis, 183 Mo. 25, 40, 81 S. W. 1082; Schulte v. City of Jefferson, 273 S. W. 170, 172. Whatever may be considered the distinguishing facts of the above cases, the general rule as stated, was declared.

In 1916, the Supreme Court decided the case of Kansas City v. Coon, 316 Mo. 524, 296 S. W. 90. The court recognized the general rule that "The legal right to the office carried with it the right to the salary". In a supplemental opinion on a motion for rehearing the further question was considered as to whether payment to a *de facto* officer of the salary incident to the office, during the time he is in possession of the office and discharging all the duties thereof is a defense to a suit by the *de jure* officer, upon his restoration to office to recover the same salary from the municipality, county or state. The court therein reviewed the cases and other authorities on the question and cited authorities holding that such payment to a *de facto* officer is such a defense, and stating the reasons therefor. In effect the reason approved was quoted from Dolan v. City of New York, 68 N. Y. 274, as follows:

"It is well settled that the acts of an officer de facto are valid so far as they concern the public or the rights of third persons who are interested in the things done. (citations). 'Society', says Bronson, C. J., in that case, 'could hardly exist without such

a rule'. The principle is, that those dealing with officers clothed with an apparent title should be protected, and that they should not be compelled to go beyond that and trace the title to its source. The case of the government paying a salary to an officer de facto is, we think, within the same protection, and that such payment is a defense to an action by the officer de jure against the officer or body charged with the duty of paying salaries to recover it. This does not deprive the person who has been wrongfully deprived of his office of a remedy. He may recover his damages for the wrong against the usurper; and the amount of salary, if not the fixed measure, may be considered by the jury in assessing the damages''.

The Supreme Court in the Coon case thereupon held:

''In this state a de facto officer, that is, one in possession of the office and discharging all the duties pertaining thereto, under color of right, can compel by mandamus the payment of the salary incident to the office; and in such proceeding his right and title to the office cannot be inquired into. (citing cases). If, therefore, the person who was appointed to succeed Pickett was a de facto officer, he could, so long as he continued to be a de facto officer, have compelled the disbursing officers of Kansas City to pay the salary of the office to him, not withstanding they might have had every reason to believe that Pickett had been wrongfully removed''.

The decision was by a divided court.

It is contended by the appellant here that the matters last quoted above from the Coon case were *obiter dicta*. In 1927, in State ex rel. Gallagher v. Kansas City, 319 Mo. 705, 7 S. W. 2d 357, the relator sought, by mandamus, to compel the city to restore him to his position, from which he claimed to have been unlawfully discharged. He also sought to compel payment to him of his salary during the time that he was not in fact rendering service. The record showed that he had been legally qualified and appointed. After the discharge, another person appeared upon the payroll in place of the relator, and was paid the salary. One of the questions at issue in the case was whether or not it was a complete defense to the city that the salary had been paid to a *de facto* officer. In connection with this issue the court referred to the Coon case, supra, and adopted its ruling in that respect. The court dealt with the argument made therein that such a holding in the Coon case was *obiter dicta*, and emphatically held to the contrary, and said:

''To our minds this defense is a bar to the present action under the great weight of authority, * * *''.

The court said, p. 716:

''To further and fully relieve what Ragland, J., said on the motion for rehearing in State ex rel. v. Coon, * * * from the

charge of being *obiter*, we endorse and approve all that he said therein upon the question of the payment of a salary to a *de facto* officer as being a complete defense to an action by a *de jure* officer for salary during the occupancy of the office by the *de facto* officer''.

This, the court said, was plainly supported by the overwhelming weight of authority, quoting from 16 L.R.A. (N.S.) p. 794, as follows:

"There is, however, an argument which is, of itself, sufficient to support the rule recognized *by the weight of authority*, and which seems logically unassailable. This is that, since it is for the interest of the community that public offices should be filled and the duties of the offices discharged by either an officer *de jure* or an officer *de facto*, and, in order to secure such service, the officer performing them must ordinarily be paid, payment in good faith to the officer discharging the duties of the office should be deemed justified, the *de jure* officer being remitted to an action against the *de facto* incumbent for the fees or salary received by him''.

In City of Miller v. Sherman (1940) 139 S. W. 2d 1114, the Springfield Court of Appeals cited and followed the opinion in State ex rel. Kansas City v. Coon, supra, 1115. Our court in Stratton v. City of Warrensburg, 237 Mo. App. 280, 167 S. W. 2d 392, wherein the controlling question was the right or title to the office involved, we cited with approval a part of the rule stated in the Cunio case, supra, and did so in the following words:

"The true rule is that the right to the compensation attached to an office is an incident to the legal right to the office and not to the exercise of the functions of the office''.

That statement, in view of the previous Supreme Court decisions above noted, contemplated its applicability in a proper proceeding against the proper person for recovery of the salary paid, and did not state a contrary rule as to the right of the city to pay and the *de facto* officer to receive compensation for services rendered by him in good faith.

In 1944, the Supreme Court rendered its decision in State ex rel. Nicolai v. Nolte, 352 Mo. 1069, 180 S. W. 2d 740. In that case, under the Charter of St. Louis, and due to the death of the mayor, the president of the Board of Aldermen succeeded the mayor until the latter's successor was elected, and the vice-president (the relator) "temporarily held" the office of president of the Board thus vacated. The charter provided that in such case the vice-president should "hold the office of president". The question was whether the relator was entitled to the salary of president or vice-president of the Board. "Hold", was defined by the court to mean "to own or possess; to be in possession of; to occupy; to derive title to; as to hold office" (Quoting from Webster's New International Dictionary). The court

ruled that the relator "held" the office of president of the Board, and, in that connection said, l. c. 740:

"There is also a principle equally well fixed that so long as an officer holds his office the salary provided for the office belongs to him because the law attaches it to the office; because it is an incident to the office".

In other words, the relator was president of the Board *de jure*, and was *holding* that office and performing the duties thereof. We do not deem that case to modify the rule as previously stated in the Coon and Gallagher cases, supra.

It is our opinion that the rule, therefore, in this state is, in effect, that one who is accepted and assigned to an office or position in a municipality, and in good faith, and under color of right, takes and holds possession of said office and discharges the duties thereof, relying upon the prescribed salary therefor, may sue the municipality and recover any such compensation not paid. Especially would this rule apply in the instant case where no one else disputed the right, title or possession of claimant's office.

In view of the foregoing and of the admission by the appellant that the employee Johnson occupied the status of a *de facto* officer of the city, the conclusion is inescapable that the respondent, assignee of the employee Johnson, has a right to recover in this action. The judgment is affirmed. All concur.