**J. W. SHIKLES, Appellant,**

v.

**The CITY OF CLINTON, Missouri,**
**Respondent.**

No. 22872.

Kansas City Court of Appeals.
Missouri.

Nov. 3, 1958.

Clifford B. Kimberly, Martha Sperry Hickman, Kansas City, for appellant.

Charles S. Stratton, Clinton, for respondent.

BROADDUS, Presiding Judge.

This is an action for a declaratory judgment whereby the plaintiff, J. W. Shikles, seeks to establish the validity of a contract of employment with the defendant, City of Clinton. There was a finding and judgment for defendant and plaintiff appealed. The appeal was originally taken to the Supreme Court. That court held that it was without jurisdiction of the cause within the meaning of Art. V, Sec. 3 of our Constitution, V.A.M.S. and transferred the same to this court.

The contract was executed on February 17, 1953. It recites that the City of Clinton, then contemplating the construction of Sanitary Sewers and Sewage Treatment Works, engaged appellant as Consulting Engineer "in the matter of design and construction of the proposed improvements."

By the terms of the contract appellant was to make a thorough investigation of the conditions pertaining to and affecting the desired improvements, and from the information so secured, prepare a comprehensive report and estimate giving the

probable cost of the proposed improvements, the expense of operating the same, and such other data and information as would be of interest in connection therewith.

Appellant also agreed to make the necessary tests of the existing sewage and industrial plant waste in order to meet all requirements of the State Board of Health; to prepare plans and estimates of the proposed improvements; to examine the bids submitted and assist the City Council in securing an equitable contract; that during the construction of the proposed improvements he would maintain supervision over the work, see that all grades and lines were correctly established, inspect all material used, and, in general, look after the interests of the City throughout.

For the above service, respondent City agreed to pay appellant a sum equal to 5% of the total cost of the improvements, less legal fees, engineers fees and right of ways, plus $500 per month for resident engineer on the work, the same to be paid as follows: (a) $1,000 upon the presentation of a copy of the report and preliminary estimate; (b) 4%, less $1,000 for preliminary report, upon delivery of a complete copy of final plans and specifications; (c) 1% at the end of each month during the construction, based upon the contractor's monthly estimates; (d) The salary of the Resident Engineer to be paid monthly, and (e) any remaining balance between the several payments and the total amount due under the contract to be payable upon completion of the improvements.

On October 22, 1953, respondent authorized the holding of a special election submitting the following proposals to the voters of the City: Proposition No. 1: to issue sewerage Revenue Bonds in the amount of $500,000, and Proposition No. 2: to issue General Obligation Bonds in the amount of $110,000. The election was held on November 17, 1953, with the following results: For Proposition No. 1—391; Against Proposition No. 1—860; For Proposition No. 2—382; Against Proposition No. 2—831.

Respondent is a City of the Third Class, and the bonds mentioned in Proposition No. 1, required approval of ⅘ of the electors, and the bonds in Proposition No. 2 required approval by vote of ⅔ of the qualified electors voting at the election.

From the transcript it appears that from the date of the election no action was taken with reference to the contract until April 17, 1956, when respondent City notified appellant that it did not believe that it was "legally bound" by the contract. It stands admitted that the City paid to appellant the sum of $1,000 for preparation of the preliminary estimate and report.

The trial court found "that the contract at issue could not have been carried out without the approval of the voters, in providing funds for the improvements, and, incidentally, the payment of compensation of plaintiff; that such contract anticipated that such payments would be made from such funds, and that such payments would necessarily entail funds and income beyond the year 1953, and would need approval of electors at an election; that such contract entered into between plaintiff and defendant on February 17, 1953, was contrary to public policy and 'ultra vires' and 'void ab initio.'"

The court also found that the contract had to all intents and purposes been "abandoned" by the parties prior to April 17, 1956; and that, inasmuch as no time limit was set forth in the contract, a reasonable time for performance had expired prior to April 17, 1956.

We have reached the conclusion that the first ground assigned by the trial court for its holding is sound. Thus it will not be necessary to discuss the other two given in the Court's finding.

There is no dispute between the parties that in order to obtain the necessary funds with which to build the sewers contemplated in the contract the qualified voters of

the City would have to approve the issuance of the bonds by a majority vote of 4/7 and 2/3 respectively.

Appellant testified that the contract, as he understood it, contemplated obligating the City for several years after the date of its execution.

Section 26 of Article 6 of our Constitution prohibits any "city * * * or other political * * * subdivision of the State" from becoming "indebted in any amount exceeding in any year the income and revenue provided for such year," 26(a) except "by vote of two-thirds of the qualified electors thereof voting thereon." 26(b).

One of the decisions of our Supreme Court in which the above sections came under discussion is that of Fulton v. City of Lockwood, Mo., 269 S.W.2d 1. In that case an action had been brought against the City to recover a balance alleged to be due the plaintiff, a consulting engineer, for services rendered under a contract of employment to prepare plans and specifications for the construction of a sanitary sewerage system. At page 7 of the opinion appears the following language, which is clearly applicable to the instant case.

"Plaintiff testified he knew the city 'didn't have any (funds) available.' His suit is for six percent of the estimated $148,000 construction cost. It is based upon the city incurring indebtedness far in excess of any general obligation bonds the city could lawfully issue at that time under the applicable statutory and constitutional provisions so far as we have discovered. RSMo 1939, §§ 7152, 7180, 7368, Sections 95.405, 95.410, 95.115 to 95.135, 95.160. RSMo 1949, V.A.M.S.; V.A.M.S.Mo.Const.1875 Art. X, §§ 12, 12a, Mo.Const.1945, Art. VI, § 26(a) to 26(f). Under said provisions municipalities may not spend or contract to spend, become indebted, in an amount exceeding the income and revenue provided for the calendar year involved, plus any unencumbered balances from previous years; are forbidden to anticipate the general revenues of subsequent years, and the permissible additional general obligation bonds must be authorized by the required two-thirds vote of the qualified electors. Sager v. City of Stanberry, 336 Mo. 213, 78 S.W.2d 431, 435 (2, 4, 5); Grand River Township [De Kalb County] v. Cooke Sales and Service, Inc., Mo.Sup., 267 S.W.2d 322. The contract contemplated action by the city in excess of its powers, was ultra vires and void ab initio."

The judgment is affirmed. All concur.