Mark B. LAYNE, Appellant,

v.

CITY OF WINDSOR, Missouri, a Municipal
Corporation, Respondent.

No. 53763.

Supreme Court of Missouri,

Division No. 1.

June 9, 1969.

Motion for Rehearing or to Transfer to Court
En Banc Denied July 14, 1969.

———◆———

Ike Skelton, Jr., Lexington, Gayles R. Pine, Warrensburg, for appellant; Bradley, Skelton & Schelp, Lexington, of counsel.

James B. Wilson, Windsor, for respondent.

WILLIAM E. BUDER, Special Judge.

Plaintiff appeals from a judgment for defendant where trial was to the Court without a jury. Plaintiff sought to recover damages for the amount of $20,000.00 on breach of contract from the City of Windsor, a city of the fourth class, located in Henry County, Missouri. Article V, Section 3, Constitution of Missouri, V.A.M. S., and the amount in dispute vest jurisdiction in this Court.

Plaintiff, a registered professional engineer, was employed by defendant under a contract, which was incorporated and set forth in a duly enacted ordinance, to prepare and submit plans and estimates for a sewer extension project to be constructed in the city and to direct and supervise the construction thereof under a master plan. Upon completion and submission of preliminary plans and estimates, construction on the sewer extension project was to proceed after a proposal for a bond issue therefor was adopted by the voters of the city. The ordinance was enacted on November 6, 1961, and the bond issue proposal was first submitted to the voters on May 18, 1964, but it was not adopted. Plaintiff then performed some adjustments and revisions to effect a reduction in cost of construction on the project and such proposal, which was submitted to the voters on October 20, 1964, also failed. Plaintiff had received $1,500.00 from defendant for his services. During the month of January, 1965, the board of aldermen adopted a resolution wherein plaintiff's entire program was abandoned and notification thereof was had upon plaintiff. Sometime later another registered professional engineer was employed by defendant and a subsequent bond issue was approved by voters. The project then progressed under direction of the second engineer and under his plan and estimates.

The evidence shows that plaintiff and his staff prepared and completed plans, specifications and surveys for the preliminary report and secured estimates of cost thereon and the same all were embraced within the initial bond issue proposal. After the initial bond issue failed to pass, plaintiff met and conferred with members of the board of aldermen and some adjustments and revisions were achieved in plaintiff's plan and estimates. Essentially these provided for an alternate alignment system to put a lagoon closer to the city and to put another lagoon in the northwest part of the city. City officials also requested plaintiff to attend a hearing before the Water Pollution Board at Columbia, Missouri, and this board found his preliminary plan and estimates to be economical and feasible. Plaintiff and his staff performed numerous and varied other services with respect to the project which extended over a three year period and he now contends he is entitled to payment under a schedule issued by the Society of Professional Engineers.

Pertinent portions of the ordinance relating to the contract of employment appear, in part, as follows:

"Section 1. * * * (D) After the presentation of the preliminary report the Consulting Engineer will attend a mass meeting to answer questions and present the Preliminary Master Plan estimate and report to the Citizens of the Community. The Board of Aldermen then shall submit bond issues for approval to the legal voters of Windsor, Missouri, for financing sewer system extension."

"Section 2. (A) That said Mark B Layne be also employed by the City of Windsor, Missouri, in the event such bond issues be approved by the legal voters of said City, to make and prepare complete plans, profiles and specifications and construction estimates for the construction of said sewer system extension and to do all other necessary engineering work in connection with the construction thereof, including the supervision of the construction of said improvements. This section to become effective only after the approval of the bonds by the voters."

"(B) If after approval by the legal voters of Bond Issues for the financing of the project or parts thereof, sections of engineering services are delayed from causes beyond the control of the engineer such as Federal or State restrictions due to war or other causes, this agreement shall be a continuing contract, for engineering services on the project."

"(C) The Engineer shall make revisions of the preliminary plans, report and estimate from time to time pending subsequent bond issues, or changes in Federal or State Regulations without additional expense to the City." * * *

█ Plaintiff's first assignment of error is directed to the holding by the trial court that the contract terminated by virtue of its own terms. Plaintiff takes the position that under the terms of the contract defendant was obligated to submit two additional bond issue proposals to voters after the first or initial submission had been rejected. This is based primarily upon the words "bond issues" appearing in Section 1 (D) and "subsequent bond issues" appearing on Section 2 (C) of the contract. The words "bond issues" mean, of course, more than one bond issue and actually more than one was submitted to voters. The words "subsequent bond issues," being contained in Section 2, apply only in the event a bond issue was approved. The entire contract including these words must be construed, however, under controlling authorities relating to contracts of this character. The case of Kansas City v. City of Raytown, Mo., 421 S.W.2d 504, does concern a situation where a city of the fourth class sought cancellation of a contract for sewer construction after two unsuccessful bond elections were held. Although the said city did not prevail in that case, the terms of the cooperative agreement involved therein are entirely different than those presented in this case. The cases thus are clearly and readily distinguishable. Here the preliminary stages, as provided in Section 1, had progressed and were completed. The voters rejected bond issue proposals, which embraced plaintiff's plans and estimates, on two separate occasions. No funds then became available for sewer construction and Section 2 of the contract did not become effective. The terms of the contract are very explicit in this respect. In Fulton v. City of Lockwood, Mo., 269 S.W.2d 1, 7, the following language appears and it is applicable in the present case.

" * * * It is based upon the city incurring an indebtedness far in excess of any general obligation bonds the city could lawfully issue at that time under the applicable statutory and constitutional provisions so far as we have discovered. * * * Under said provisions municipalities may not spend or contract to spend, become indebted, in an amount exceeding the income and revenue provided for the calendar year involved, plus any unencumbered balances from previous years; are forbidden to anticipate the general revenues of subsequent years, and the permissible additional general obligation bonds must be authorized by the required two-thirds vote of the qualified electors." It is apparent that the contract could not be carried out without approval by the voters. Upon defeat of two separate bond issue proposals, Section 2 did not become effective and was null and void. The contractual relationship then ceased to exist. Under these circumstances, no further obligation on the part of defendant remained in existence and defendant was wholly

without authority to proceed with the project. Needles v. Kansas City, Mo., 371 S.W.2d 300; Shikles v. City of Clinton, Mo.App., 319 S.W.2d 9.

Plaintiff's next assignment of error concerns the holding by the trial court that there had been no breach of contract by defendant. Plaintiff maintains that the resolution, which was adopted by the board of aldermen on January 7, 1965, did not repeal or rescind the ordinance and there was a breach of contract when another engineer was subsequently hired. There is no doubt that a resolution is entirely different from an ordinance. A resolution relates to administrative business of a municipal corporation and will not suffice when action on the part of the municipality is required to be taken by ordinance. City of Salisbury v. Nagel, Mo. App., 420 S.W.2d 37; Julian v. Mayor, Councilmen and Citizens of City of Liberty, Mo., 391 S.W.2d 864. "The terms and conditions of a contract having to do with sewerage disposal require the legislative action of the Mayor and Council." State ex rel. Prichard v. Ward, Mo.App., 305 S.W.2d 900. A city can only act by ordinance duly enacted and not by resolution. Midwestern Realty Corp. v. City of Grandview, Mo.App., 416 S.W.2d 35. A duly enacted ordinance cannot be repealed by resolution. Stratton v. City of Warrensburg, 237 Mo.App. 280, 167 S.W.2d 392. The resolution thus accomplished no change in the respective positions of the parties with reference to the contract. Although a resolution may not command the same status, or be of the same quality, as an ordinance, the result has no direct application upon the present case. The resolution really served no purpose other than notification to plaintiff. The Court already has held and decided that the contract expired by virtue of its own terms and no contractural relationship existed after the second bond issue was defeated. Consequently, there was nothing remaining and there could be no breach of contract when another engineer was hired.

Another assignment of error relates to the application of the theory of quantum meruit. "The fact a municipality has received the benefit of a performance by the other party does not make the municipality liable either on theory of a ratification, estoppel or implied contract." Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570. The decision announced therein has been followed in this state and remains controlling. Needles v. Kansas City, Mo., 371 S.W.2d 300; Grauf v. City of Salem, Mo.App., 283 S.W.2d 14. A rather comparable situation applies to a school district and in Metz v. Warrick, 217 Mo.App. 504, 269 S.W. 626, it is said, "The statute * * * requires all contracts with school districts to be in writing, and hence a school district cannot be held liable on quantum meruit or any sort of implied contract." There is nothing to show, nor do any authorities in this state indicate, that the theory of quantum meruit can be invoked against a municipal corporation. There has been no compelling reason advanced for departure from this established rule. Plaintiff, an experienced engineer, definitely knew he was dealing with a municipality. All persons are charged with knowledge of corporate powers of municipalities and manner prescribed by statute for exercise of such authority. Needles v. Kansas City, supra; Grauf v. City of Salem, supra.

Plaintiff's last assignment of error involves the holding by the trial court that the sum of one thousand five hundred dollars was all that plaintiff was entitled to receive. Such claim is based upon certain provisions of Section 1 (B) which reads as follows: "Any necessary boring, or drilling for a site investigation will be made under the direction of the Engineer, but shall be paid for by the City." The payment mentioned therein provides for compensation to the party who actually conducted the boring or drilling operations. Plaintiff's direction and supervision thereof are necessarily included within the preliminary stages and those contemplated

under Section 1. The $1,500.00 payment to plaintiff, as aforesaid, embraced all services within the preliminary stages and included those contemplated under Section 1. This interpretation is consistent with the terms of the contract, and compatible with all phases thereof. It likewise is in accord with the decisions mentioned herein.

The judgment is affirmed.

All concur.