Jeffrey N. and Theresa M. **RICE, Appellants,**

v.

**Ruby L. HUFF and Donna Bernard, Respondents.**

No. WD 57795.

Missouri Court of Appeals, Western District.

July 25, 2000.

Gabrielle Rhodes, Kansas City, for appellants.

Thoms Christopher Watkins, Kansas City, for respondents.

RONALD R. HOLLIGER, Judge.

**Factual and Procedural Background**

On August 4, 1997, Jeffrey and Theresa Rice ("Rices") filed a quiet title action seeking a declaration that under the doctrine of adverse possession they were the owners of a strip of land located between their property and property owned by Ruby Huff and her daughter Donna Bernard. The Rices now appeal from the circuit court's summary judgment determining that Huff and Bernard are the owners of the disputed tract. The disputed strip is a portion of a dedicated roadway never used for that purpose by the City of Lawson. Under RSMo 516.010,[1] one of the elements of an adverse possession claim is continuous possession for ten years prior to commencement of the action to perfect title. The Rices contended that a 1975 City resolution vacated the unused tract. The trial court found that the city did not vacate the tract until it passed an official ordinance and signed conveyance deeds in 1998, less that ten years before the Rices filed their action. The dispositive question is the date upon which the City of Lawson vacated the property within which the disputed tract is located.

The parties reside in the Jefferson Heights Addition subdivision located in the city of Lawson, Missouri, a fourth-class city. The Rices reside at 1113 North Pennsylvania. Huff and Bernard own adjoining property south of the appellants at 1109 North Pennsylvania. When the subdivision was originally dedicated in 1961 there was a strip of land fifty feet wide between 1109 and 1113 Pennsylvania, dedicated for use by the City for construction of the west portion of 12th Street. The original plat also dedicated a similar strip for the portion of planned 12th Street east of Pennsylvania. The west portion of 12th Street (including the disputed tract) was never built. The east portion of 12th Street was constructed after 1975; the property originally dedicated for the planned street was fifty feet wide; the disputed tract is the southern twenty-five feet of this strip of land. For ease of discussion, the properties will be referred to in the following manner: (1) the Rices' property, (2) the Huff property, (3) the undisputed tract (northern half of vacated 12th Street); and (4) the disputed tract (the southern half of vacated 12th Street).

1. All references are to RSMo 1994, unless otherwise noted.

In April of 1961, the plat of the Jefferson Heights Addition in the city of Lawson, Ray County, Missouri, was filed and recorded. The streets running through the Jefferson Heights Addition were dedicated to the public for public use and travel. In 1976, a second plat known as Jefferson Heights Addition II was approved and recorded. Jefferson Heights Addition II partially overlapped the eastern portion of the original Heights addition, with a boundary line lying half a block to the east of North Pennsylvania Street. One-half block of east 12 th Street, therefore, was included in the Jefferson Heights Addition II.

On February 3, 1975, the Lawson Board of Aldermen voted on a motion to deed 12 th Street back to the property owners adjacent to the street. The minutes from that meeting read:

> Larry Swearingin made a motion that the City deed 12 th Street in Jefferson Heights back to the adjacent property owners on either side. Developers to pay any cost of the transfer. Motion seconded by Murle Nolker.
>
> Aye: Stephen Nolker, Murle Nolker, John Briant, Larry Swearingin
>
> Nay: None

On February 6, 1975, a local newspaper, the *Lawson Review,* announced that the Board of Alderman determined that "Twelfth Street in Jefferson Heights, a distance of *two* blocks, will be deeded back to the property owners on either side of

the street. The developer will bear the cost of the transfer." In February of 1975, Stephen Nolker,[2] a member of the Lawson Board of Aldermen, owned both the Rice and Huff properties. In June of 1975, Stephen Nolker sold 1113 Pennsylvania to Clara Knutter, who sold to the Rices in 1989. Knutter maintained the entire fifty-foot strip, planting trees, bushes and a garden. Neither Knutter's nor Rices' deeds described the disputed or undisputed tracts but only conveyed the property by the same lot descriptions contained in the original 1961 plat. In April of 1976, the Board voted to open and construct 12th Street, beginning at Pennsylvania Street and heading east through a portion of the original Jefferson Heights Addition and through the new Jefferson Heights Addition II. Also in 1976, Nolker sold 1109 Pennsylvania to Mrs. Thomas. She constructed a fence along the northern line of her lot, thus creating the appearance that the unbuilt portion of 12th Street was part of 1113 Pennsylvania. There were several subsequent owners until Huff and Bernard acquired the property in August 1990, from the Janhonens. Only the deed to Huff and Bernard purported to convey the disputed tract as well as the original platted lot.

For over thirteen years after the February meeting in 1975, the Board of Aldermen took no actions with regard to its vote to deed 12th Street to the adjacent property owners. The Board did not execute any deeds to the adjacent property owners or pass an ordinance officially vacating 12th Street. From 1975 until 1989 or 1990, the disputed tract was not on either the city or county property tax rolls. In 1988, a resident inquired about the situation upon placing his house for sale. The minutes from a Board of Aldermen meeting in March of 1988 note that the members had voted "by a motion by the Board of Aldermen instead of by a duly passed ordi-

nance" with regard to the board's 1975 decision to deed the street to the adjoining land owners. The Board voted to contact the city attorney to "draft the appropriate ordinance to vacate W. 12th Street in the Jefferson Heights Addition." On April 11, 1988, the Board passed Ordinance No. KK358 declaring 12th Street vacated, and the mayor approved it. The ordinance reads:

**AN ORDINANCE DECLARING THE VACATION OF W. 12TH STREET IN JEFFERSON HEIGHTS, LAWSON, MISSOURI.**

**BE IT ORDAINED BY THE BOARD OF ALDERMEN OF THE CITY OF LAWSON, MISSOURI, AS FOLLOWS:**

*Section 1.* That said Board of Aldermen hereby deem it expedient and necessary that the vacation and abandonment of W. 12th Street in Jefferson Heights be formally adopted by ordinance.

*Section 2.* That said 12th Street in Jefferson Heights *having been previously vacated, discontinued and abandoned* by unanimous vote of the Board of Aldermen, said vote having been recorded in the minutes of the February 3, 1975, Board of Aldermen meeting. (Emphasis added)

*Section 3.* That all right, title and interest to said portion of street hereby vacant, held and owned by the City of Lawson, is hereby bargained, granted, sold and conveyed to the owners of property adjacent to said vacant street as of February 3, 1975.

*Section 4.* All ordinances or parts of ordinances in conflict with this ordinance are hereby repealed.

*Section 5.* That this Ordinance shall be in full force and effect from and after its passage and approval.

**2.** Nolker was not the original developer of Jefferson Heights but the record infers he was the developer of Jefferson Heights Addition II.

At the time the ordinance was passed, the Huff property was owned by the Janhonens, and Clara Knutter still owned the Rice property. On January 20, 1989, Mrs. Knutter conveyed her property to Theresa Rice. On January 31, 1989, the city executed quitclaim deeds conveying the vacated portion of 12 [th] Street to the adjacent property owners; the Janhonens received a deed for the disputed tract, and Theresa Rice (then Theresa Davis) received a deed for the northern half of the vacated street. The deeds were recorded in February of 1989. At approximately the same time, the property tax rolls were changed to reflect the transfer of ownership from the city to the Janhonens and Theresa. In August of 1990, the Janhonens conveyed their property, including the disputed tract, to Huff.

Huff and Bernard removed the fence between their lot and the disputed tract in 1996 and contested the Rices' ownership of the disputed tract. The Rices then filed this action in 1997.

▪ The Rices filed a motion for partial summary judgment on the quiet title count [3] of their petition. The Rices argued that abandonment of the street occurred in 1975 or alternatively was confirmed retroactively in 1989 to the 1975 action, thus supplying their necessary ten years of continuous possession.[4] Huff and Bernard filed a motion for summary judgment, claiming (1) a person cannot take city property by adverse possession, (2) the actions of the Board of Aldermen in 1975 were insufficient to vacate the disputed tract, and (3) the 1989 ordinance violates the Missouri Constitution's prohibition against the enactment of a law that is retrospective in its operation. The circuit court denied the Rices' motion for partial summary judgment and granted summary judgment in favor of Huff and Bernard. The court found that the motion by the

Board of Aldermen in 1975 "expressed only the intent to deed the property in the future and was not a present effective vacation of said 12 [th] Street." The court further found that the 1988 ordinance should not be applied retroactively because a retroactive application of the ordinance would impair the substantive rights of Huff and Bernard. The court also noted some inconsistencies within the ordinance. The court concluded that Huff and Bernard have a superior right, title and interest to the disputed tract. The Rices timely appealed. We affirm.

### Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists, and judgment for the moving party is appropriate as a matter of law. *Bell v. May Dept. Stores Co.,* 6 S.W.3d 871, 873 (Mo. banc 1999); *Burks v. City of Licking,* 980 S.W.2d 109, 110 (Mo.App.1998). The Missouri Supreme Court set forth the standard of review when considering appeals from summary judgments in *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993):

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those, which should be employed by the trial court to determine the propriety of sustaining the motion

---

**3.** They voluntarily dismissed their other counts as did Huff and Bernard dismiss their counterclaim, leaving only the quiet title count before the court.

**4.** One who claims by adverse possession may tack his time of possession with that of his predecessors in interest. *Flowers v. Roberts,* 979 S.W.2d 465, 469 (Mo.App.1998).

initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

(Internal citations omitted).

## Discussion

The Rices raise two points on appeal. They argue that the trial court erred in granting Huff and Bernard's motion for summary judgment and denying the Rices' motion for partial summary judgment. For purposes of judicial economy and ease of analysis, we will discuss both points together. First, they assert that the City of Lawson vacated the disputed tract on February 3, 1975. According to the appellants, the City vacated and abandoned the disputed tract from and after February 3, 1975, and a formal ordinance was not required to effectuate the vacation and abandonment, thereby commencing and accruing appellants' predecessors' adverse possession rights as of 1975. The Rices argue that their predecessors' adverse possession rights to the disputed tract fully vested in 1986 and those interests were conveyed to them in 1989. The Rices further contend that, if an ordinance was necessary to vacate the tract, the 1988 ordinance effectively vacated the tract as of 1975 because it was procedural and remedial in nature and the Board of Aldermen intended it to apply retroactively. According to them, a retroactive application of the 1989 ordinance would fail to affect the vested rights of Huff and Bernard because they did not acquire any property interest in the property in 1990.

Huff and Bernard assert that the Board of Aldermen did not "vacate and abandon" the disputed tract at the February 3, 1975, meeting. They argue that the 1975 resolution only indicated the Board's intent, at some time in the future, to execute deeds to the entire length of 12th Street to the adjacent property owners. This intent, they claim, was only finally completed by the 1989 ordinance and deeds which specifically conveyed the disputed and undisputed tracts to the adjoining landowners at that time (Riches and Janhonens).[5] Huff and Bernard ask how the city could have built the other portion of 12th Street east of Pennsylvania Street in 1976 since the 1975 resolution did not distinguish between the street right of way east and west of 12th Street. If the 1975 resolution was effective, they point out that the city would have had no interest in east 12th Street when the City built it in 1976. They claim the disputed tract remained public property until 1988, when the Board of Aldermen passed a city ordinance officially vacating and abandoning West 12th Street. They further contend that, if the ordinance was applied retroactively, it would be unconstitutional. They assert that such an application would give legal effect to a past transaction that would otherwise have no legal effect; specifically, they claim that a retroactive application of the ordinance would create a right to the disputed tract in Mrs. Knutter which she would not otherwise have. Absent retroactive application, the disputed tract would have remained public property, immune from adverse possession claims, until 1988. Respondents argue, therefore, appellants cannot prove that adverse possession of the disputed tract occurred continuously for a ten-year period, a necessary element of Rices' claim.

In order to prevail on a claim of quiet title by adverse possession under § 516.010, "the claiming party has the burden of proving that it possessed the land, and that the possession was (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, for 10 years prior to commencement of her action to perfect title by

---

**5.** We need not decide and do not consider whether the passage of the vacation ordinance is itself sufficient to pass title or whether the deeds were required to complete the abandonment.

adverse possession.... The burden of proving each element by a preponderance of the evidence is on the plaintiff, and failure to prove even one element defeats the claim." *Shoemaker v. Houchen*, 994 S.W.2d 40, 44 (Mo.App.1999). The statute of limitations applicable to adverse possession claims does not apply to public lands, and, therefore, title to public property cannot be claimed on the basis of adverse possession. § 516.090. Section 516.090 prevents a party from claiming adverse possession of land dedicated for a public street. *Ollison v. Village of Climax Springs*, 916 S.W.2d 198, 205 (Mo. banc 1996). Therefore, the statute of limitations on an adverse possession claim of a dedicated street only begins to run once a city vacates or discontinues the street.

The power to dispose of an unneeded street is an authorized legislative function under § 88.673; *State v. Kline*, 717 S.W.2d 849, 853 (Mo.App.1986). Under § 88.673, the board of aldermen of a fourth-class city possesses the power to vacate or discontinue any public street "whenever deemed necessary or expedient." This statute further provides that the vacated street shall "revert to the owners of the adjacent lots in proportion as it was taken from them." "In order to vacate a street, the city must use the process provided for by section 88.673 RSMo...." *Mahaffy v. City of Woodson Terrace*, 609 S.W.2d 233, 238 (Mo.App.1980). A city street may only be abandoned "by an affirmative act on the part of the board of aldermen." *Brown v. City of Fredericktown*, 886 S.W.2d 747, 749 (Mo.App.1994) (citing § 88.673 and *Mahaffy, supra)*.

We do not agree that a formal ordinance was unnecessary to implement such vacation and abandonment. "One asserting abandonment of a public road must carry the burden of showing abandonment by clear and cogent proof. An intention to abandon may be inferred only from strong and convincing evidence." *Mitchell v. City of Everton*, 655 S.W.2d 864, 868 (Mo.App. 1983) (internal citations omitted); *See also,*

*Wilson v. Wheeler Farms, Inc.*, 591 S.W.2d 287, 289 (Mo.App.1979). In the 1975 motion, the Board voted to "deed 12th Street in Jefferson Heights back to the adjacent property owners on either side...." This motion shows the Board intended further action to cede the property back to the adjacent property owners; in order to fulfill the intention of this motion, the Board was required to take future action, that is, take those actions necessary to deed the property to the adjacent owners. The approved motion did not say that the Board vacated and abandoned 12th Street; the motion showed only an intention to one day transfer 12th Street to the property owners adjacent to the dedicated street. In addition, part of 12th Street was actually constructed after this 1975 motion. If the Board had intended to vacate and abandon the street at the time of the motion, the Board could not then have constructed the street on land it previously vacated. Although the 1988 ordinance recites that 12th Street had been vacated and abandoned by the 1975 motion, we find this unpersuasive and the Board's belief legally of no consequence.

The 1975 motion and vote lacked sufficiency to effectuate a vacation and abandonment of a dedicated street. "It seems clear under the cases that the power to...vacate public streets is a purely legislative function." *Reynolds v. City of Independence*, 693 S.W.2d 129, 132 (Mo. App.1985); *See also, Kline*, 717 S.W.2d at 853 (disposing of public street an authorized legislative function under § 88.673). "It is undoubtedly true that the legislative power vested in a board of aldermen and the mayor can be exercised only by ordinance...." *City of Jackson, to Use of Cape County Sav. Bank v. Houck*, 226 Mo.App. 835, 43 S.W.2d 908, 909 (1931). Vacating a street is a purely legislative function, and a legislative power of the Board of Aldermen may only be exercised by ordinance.

"The power to be exercised is legislative in nature if it prescribes a new

policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself." *Williams v. City of Kirkwood,* 537 S.W.2d 571, 574 (Mo.App.1976) (internal citations omitted). "A city can only act by ordinance duly enacted and not by resolution." *Layne v. City of Windsor,* 442 S.W.2d 497, 499 (Mo.1969); *See also, Midwestern Realty Corp. v. City of Grandview,* 416 S.W.2d 35, 39 (Mo.App.1967). "A resolution relates to administrative business of a municipal corporation and will not suffice when action on the part of the municipality is required to be taken by ordinance." *Layne,* 442 S.W.2d at 500. "The term 'resolution' denotes something less formal than the term 'ordinance;' generally, it is a mere expression of the opinion or mind of the council concerning some matter of administration coming within its official cognizance, and provides for the disposition of a particular item of the administrative business of a municipal corporation. * * * A resolution is not a law, and in substance there is no difference between a resolution, order, and motion." *Julian v. Mayor, Councilmen and Citizens of City of Liberty,* 391 S.W.2d 864, 866–67 (Mo.1965) (quoting 37 Am.Jur. Municipal Corporations § 142); *City of Salisbury v. Nagel,* 420 S.W.2d 37 (Mo.App. 1967); *State ex rel. Jones v. Atterbury,* 300 S.W.2d 806 (Mo. banc 1957); Vol. 5 McQuillin, Municipal Corporations, 3rd ed., Sec. 15.02. Missouri does distinguish between a resolution and an ordinance, *State ex rel. Gove v. Tate,* 442 S.W.2d 541 (Mo. banc 1969); *Waites v. St. Louis County,* 484 S.W.2d 245, 247 (Mo. banc 1972).

In *Mitchell, supra,* the plaintiffs claimed that a city abandoned a city street by ordinance. The pertinent parts of the ordinance provided:

> It is resolved that the hereinafter described street is given to the Everton Senior Citizens Housing, Inc., for the entrance to the retirement homes now planned for he City of Everton, Missouri. The street may be used by the Corporation so long as it is used for entering and leaving and is maintained by the City of Everton, Missouri.

The plaintiffs argued that the adoption of the ordinance caused a reversion of the road to the adjoining landowners because it proved intent to abandon the public use of the street. The Southern District of this court disagreed. It held that the ordinance failed to show a clear intention by the city to abandon the road. *Id.* at 868. Although the ordinance said the street was "given" to Senior Citizens Housing, the court determined that the ordinance failed to convey title to the real estate and merely reaffirmed the city's intention that the street continues to be a public street. *Id.*

■ "Municipalities are creatures of statute and only have the powers granted to them by statute." *Burks,* 980 S.W.2d at 111. Therefore, the Board's motion in 1975 was insufficient to vacate 12th Street. Because the motion of 1975 was not effective to vacate and abandon the undeveloped portion of 12th Street, the appellants' claim of adverse possession has merit only if the 1988 ordinance applies retroactively to 1975.

■ Article I, Section 13 of the Missouri Constitution provides "[t]hat no ex post facto law...retrospective in its operation...can be enacted." A statute is retrospective in operation "where it 'takes away or impairs a vested or substantial right or imposes a new duty in respect to a past transaction.'" *Silcox v. Silcox,* 6 S.W.3d 899, 904 (Mo. banc 1999) (internal citations omitted). In order for a right to be vested, "it must have become a title, legal or equitable, to the present or future enjoyment of property." *Id.* "The constitutional inhibition against laws retrospective in operation...does not mean that no statute relating to past transactions can be constitutionally passed, but rather that none can be allowed to operate retrospectively so as to affect such past transactions to the substantial prejudice to the parties interested. *A law must not give to something already done a different effect from*

*that which it had when it transpired."* *State ex rel. Clay Equipment Corp. v. Jensen,* 363 S.W.2d 666, 670 (Mo. banc 1963) (emphasis added). "A retrospective law is one that relates back to a previous transaction giving it a different effect from that which it had under the law when it occurred. Merely because a statute relates to antecedent transactions, it is not retrospective if it does not change the legal effect of the transaction." *Dilworth v. Labor & Indus. Relations Comm'n,* 670 S.W.2d 199, 202 (Mo.App.1984). The appellants cite no Missouri authority, and we have found none, that discusses whether a street may be vacated retroactively.

Retroactively vacating the street would give legal effect to a past transaction that otherwise would have no such legal effect. The motion by the Board of Aldermen in 1975 did not result in a vacation of 12th Street. A retroactive application of the ordinance would change the legal effect of the transaction, giving legal effect to Clara Knutter's possession of the disputed tract for the ten-year statutory period, which otherwise could not have been adverse to the city. § 516.090. Nor is it reasonable to ascribe such intent to the City's 1989 actions. If the City had so intended, as the Rices argue, then the warranty deeds should have gone to the 1975 owner(s) of the adjoining property. The ordinance does not apply retroactively. The right to the disputed tract vested in the Janhonens by virtue of the 1989 ordinance and deed, and the Janhonens transferred that right to Huff and Bernard in 1990. Because the 1975 motion did not effectuate a vacation of the dedicated street, the Rices could not adversely possess the land prior to 1988, less than ten years prior to the filing of their adverse possession claim. Because appellants fail to meet all the required elements for a successful adverse possession claim, respondents are entitled to judgment as a matter of law.

The judgment of the trial court is affirmed.

HAROLD L. LOWENSTEIN, Presiding Judge, and ROBERT G. ULRICH, Judge, concur.