**CLIENT SERVICES, INC., Appellant,**

v.

**THE CITY OF ST. CHARLES,**
**Respondent.**

**No. ED 85579.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 24, 2006.

William A. Hellmich II, St. Louis, MO, for respondent.

Paul Puricelli, St. Louis, MO, for appellant.

## *OPINION*

GLENN A. NORTON, Chief Judge.

Client Services, Inc. ("CSI") appeals the summary judgment entered in favor of the City of St. Charles in a dispute involving a land sale contract. We affirm.

## I. BACKGROUND

The City controls an undeveloped tract of real estate. It sought proposals for the purchase and development of the property. After selecting CSI's proposal, the City passed an ordinance authorizing the mayor and the city clerk to execute a purchase and sale agreement with CSI. *See* St. Charles, Mo., Ordinance 03–11 (Jan. 15, 2003). Attached to the ordinance was a form agreement, which the mayor and the city clerk subsequently signed. An undated purchase and sale agreement signed by the mayor and city clerk was apparently sent to CSI, but it was not signed by anyone representing the company.

Several months later, the city administrator met with representatives of CSI concerning execution and closing of the purchase and sale agreement. Thereafter, the city administrator drafted and signed a letter he intended to serve as a confirmation of the understandings reached at that meeting. The letter indicated that the City would perform certain acts to assist in closing the transaction if CSI committed to executing the purchase and sale agreement on or before August 1, 2003, in the form in which it was tendered to CSI by the City. The letter also indicated that if CSI did not meet the deadlines set forth therein, the City would re-evaluate its offer to enter into the agreement. The letter was signed by the city administrator and by the president of CSI.

Prior to closing, during a closed-session discussion, the city council and the mayor agreed by acclamation to authorize the city administrator to revoke the offer of the purchase and sale agreement. The next day, the city administrator delivered notice of the revocation to CSI. At no time before delivery of this notice had CSI delivered a fully executed purchase and sale agreement to the City or otherwise communicated its acceptance of the offer to the City. Two days after the City revoked its offer, CSI provided the City with a fully executed copy of the purchase and sale agreement and requested a closing under the contract. The City has never attempted to revoke the letter confirming the parties' agreements after their meeting, nor has the ordinance authorizing the offer ever been repealed.

CSI filed an action against the City for specific performance of the purchase and sale agreement. CSI alleged that it was ready, willing and able to perform the agreement and that there was no adequate remedy at law. CSI also sought specific performance of the City's obligations under the letter. The City responded that no enforceable contract for the sale of the property existed and that there was no contractual relationship between the parties. The City also filed a counterclaim for declaratory judgment.

On cross-motions for summary judgment, the court granted judgment in favor of the City both on the claims in CSI's petition and on the City's counterclaim for declaratory judgment. As alleged in the City's counterclaim, the court found that the offer had been properly revoked by the City prior to CSI's acceptance, that CSI had not accepted the offer prior to revoca-

tion, that the purchase and sale agreement was null and void and of no legal effect, that there was no contractual relationship between the parties and that the letter had no legal effect. CSI appeals.

## II. DISCUSSION

The propriety of summary judgment is a question of law, and our review is *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria for determining the propriety of summary judgment on appeal are no different than those used at the trial level. *Id.* A defending party, like the City, may establish a right to judgment by showing (1) facts that negate *any one* of the elements of the plaintiff's claim, (2) that the plaintiff, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of those elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support a properly-pled affirmative defense. *Id.* at 381. Although we view the record and construe all inferences favorably to the non-movant, facts set forth in support of the summary judgment motion are taken as true unless contradicted by the non-movant's response. *Id.* at 376.

### A. Necessity of Repealing the Ordinance

In its first point, CSI argues that the trial court erred in granting the City's motion for summary judgment because the ordinance directed the mayor and the city clerk to execute the purchase and sale agreement with CSI and, absent repeal of that ordinance, the City had no authority to revoke the agreement. CSI claims that the city council's and the mayor's decision to direct the city administrator to notify CSI that the offer was revoked was ineffective and that the mayor still has the duty to enter into an agreement with CSI. We disagree.

Based on its characterization of the decision to authorize revocation as a "resolution," CSI notes that Missouri distinguishes between a resolution and an ordinance. *Rice v. Huff,* 22 S.W.3d 774, 782 (Mo.App. W.D.2000). Where legislative action is required, it is generally understood that a city can only act by duly-enacted ordinance and not by resolution. *Id.* at 781–82. A duly-enacted ordinance cannot be repealed by a resolution or other act of less dignity than the ordinance itself. *Layne v. City of Windsor,* 442 S.W.2d 497, 500 (Mo.1969) (citing *Stratton v. City of Warrensburg,* 237 Mo.App. 280, 167 S.W.2d 392, 396 (1942)). A resolution is not a law, and in substance there is no difference between a resolution, an order and a motion. *Rice,* 22 S.W.3d at 782. A resolution generally is a mere expression of the council's opinion concerning some matter of administration coming within its official cognizance and provides for the disposition of a particular item of a municipality's administrative business. *Id.* Thus, a resolution relates to administrative business and will not suffice when action by the municipality is required to be taken by ordinance. *Id.*

In making its argument that the decision to grant the city administrator authority to revoke the offer was ineffective because the authority to make the offer was made by ordinance, CSI principally relies on *Layne, supra,* and on *Russell v. City of Raytown,* 544 S.W.2d 48 (Mo.App.1976). Its interpretation of these cases to support its argument, however, is incorrect. In *Layne,* the city employed the plaintiff under a contract that was "incorporated and set forth in a duly enacted ordinance." 442 S.W.2d at 498. His job was created to

plan and supervise a sewer extension project that was to be constructed in the city. *Id.* After the project's bond issue proposal failed when submitted to voters, the city's board of aldermen adopted a resolution abandoning the program. *Id.* At some time later, another engineer was employed by the city and a subsequent bond issue was approved by the voters. *Id.* The plaintiff then sought to recover damages on a breach of contact claim. *Id.*

In affirming the trial court's judgment in favor of the city, the Missouri Supreme Court recognized that a duly-enacted ordinance cannot be repealed by resolution since a resolution relates to a municipality's administrative business and "will not suffice when action on the part of the municipality is required to be taken by ordinance." *Id.* at 500. The Court also noted that the terms of the contract having to do with sewage disposal required legislative action because of the subject matter. *Id.* The Court concluded, however, that the resolution accomplished no change in the parties' positions with respect to the contract. *Id.* The Court opined that this analysis had no direct application to the case because the resolution served no purpose other than notification. *Id.* It held that the contract had already expired by virtue of its own terms when the bond issue was defeated and no contractual relationship then existed between the parties. *Id.*

In *Russell*, a city attorney filed suit against the city after he was dismissed, contending that his removal was ineffective because he had been appointed by ordinance but had been removed by resolution of the board of aldermen. 544 S.W.2d at 50. The trial court found the removal ineffective because of the city's failure to follow a separate personnel ordinance. *Id.* The trial court did not find that the removal was ineffective on the ground that the attorney was dismissed by resolution after

having been appointed by ordinance. *Id.* The appellate court reversed and found that the city's personnel ordinance did not apply to the city attorney position because State law conferred upon the mayor the power to remove the city attorney at any time and an ordinance cannot be contrary to state law. *Id.* at 51. The attorney also maintained, however, that an action taken by ordinance can only be superseded by an action taken by an ordinance and not by a resolution. *Id.* at 52. While the Court did not expressly agree or disagree with this statement, it did specifically disagree with the contention that it would be impermissible for the board to act with a summary procedure to remove persons who were appointed by ordinance except through enacting another ordinance. *Id.* The Court stated that the attorney was not actually appointed by ordinance; rather, he was appointed by the mayor and "the ordinance can be only regarded as the necessary approval given by the [b]oard" as required by law. *Id.* Thus, because the consent required from the majority of the board could take any form (including, for example, an ordinance, a resolution, or a motion) as the form was not specified by statute, the Court held that "the resolution approving [the attorney's] removal did not supersede the ordinance by which he was purportedly appointed." *Id.*

The City points out, relying on *Russell*, that simply because the original authorization of the offer by the city council was memorialized by ordinance does not mean that the subsequent authority to revoke the offer was also required to be enacted by ordinance. We agree.

Missouri law does not specify that a city council must approve a mayor's authority to enter into a contract by duly-enacted ordinance. *See* section 432.070 RSMo 2000.[1] Rather, an executed contract between a city and another party "shall be

---

1. All statutory references are to RSMo 2000.

subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing." *Id.* In addition to section 432.070, the City's charter states that "[t]he mayor shall sign in behalf of the city all ... agreements ... binding the city or conveying an interest in property...." St. Charles, Mo. Charter, section 4.3(f). The charter provision similarly does not mandate that council approve of such action in a particular form. *Id.*

While the City chose to authorize the contract in the form of an ordinance, the ordinance merely authorized and directed the mayor and city clerk to execute a purchase and sale agreement with CSI. It did not specify how the offer was to be made or withdrawn. Stated differently, the offer to CSI was not actually made by the ordinance. By signing and delivering the agreement to CSI, the mayor and the city clerk complied with the ordinance. Thus, whether the city council repealed the ordinance was irrelevant. Similar to the ordinance in *Russell,* the ordinance in this case can only be regarded as the necessary approval given by the city council authorizing the mayor as a duly-appointed agent to enter into a contract on behalf of the City as required by law. *See* section 432.070; St. Charles, Mo. Charter, section 4.3(f). Rather, the only action required by the ordinance was the delivery of a signed contract to CSI. While a repeal of the ordinance may have been required to terminate the mayor's initial obligation to execute the agreement with CSI, the City had the ability to revoke the offer after the mayor complied with the ordinance in any form. Thus, it does not matter whether the decision to revoke the offer superseded the ordinance.

Also, as in *Layne,* the decision authorizing the city administrator to revoke the contract accomplished no change in the respective positions of the parties. CSI argues that the City had seller's remorse and is disregarding its contractual obligations. But since CSI had not signed the contract nor performed any of its terms, there was not yet a contractual relationship between the parties prior to the withdrawal of the offer by the City. In addition, the ordinance does not require the City to hold its offer open indefinitely. The mayor complied with the ordinance when she signed the purchase and sale agreement and delivered it to CSI. The mayor could not compel CSI to sign it.

Point denied.

**B. Validity of Action Taken at Closed Meeting**

■ In its next point, CSI argues that the trial court erred in granting the City's motion for summary judgment because the decision to revoke the purchase and sale agreement was made in a closed meeting, allegedly in violation of the City's charter and the Missouri Sunshine Law. CSI maintains that, even if the council had the authority to revoke the offer without enacting a new ordinance, the charter still required the council to act pursuant to motion and vote at a public meeting, which did not happen here. Thus, CSI argues that the decision by the council to revoke the offer was illegal and void. We disagree.

CSI points to the City's charter, which provides that "[n]o action by the council shall have legal effect unless the motion for the action and the vote by which it is disposed of take place at proceeding open to the public." St. Charles, Mo. Charter section 3.10(a). In response, the City argues that because the Sunshine Law authorizes closed meetings in certain circumstances under section 610.021 (including where the subject of the meeting is real estate sales) the Sunshine Law—not the

City's charter—should govern whether or not the City may hold a closed meeting.

■ Under Missouri law, a charter provision that conflicts with a state statute is void to the extent of the conflict. *City of Springfield v. Goff,* 918 S.W.2d 786, 789 (Mo. banc 1996). Such a conflict exists where a charter prohibits what a statute permits. *Id.* Notwithstanding this principle, the Sunshine Law permits closed meetings "[e]xcept to the extent disclosure is otherwise required by law...." Section 610.021. Relying on this language, CSI argues that under the City's charter, disclosure is "otherwise required" despite any exceptions contained in the Sunshine Law. CSI further contends that section 3.10 of the charter has the same legal effect as a Missouri statute since charter provisions have the same force as acts of the General Assembly so long as they are consistent with state and federal constitutional requirements and statutes relating to matters of statewide concern. *See Bueche v. Kansas City,* 492 S.W.2d 835, 842 (Mo. banc 1973).

■ We need not decide whether the City's charter provision prevails over the Sunshine Law real estate exception because the charter does not apply in this case. In construing city charter provisions, courts seek the intent of its drafters as gleaned from the language used. *State ex rel. City of Springfield v. Bonacker,* 923 S.W.2d 467, 469 (Mo.App. S.D.1996). It is presumed that the enacting body intended a logical result. *Id.* In addition, all parts of the charter provisions should be construed together. *State ex rel. Childress v. Anderson,* 865 S.W.2d 384, 387 (Mo.App. S.D.1993). Section 3.10 appears in the City's charter under the heading "Legislative Proceedings." While we acknowledge that headings do not necessarily dictate the meaning of actual provisions, read in its entirety, section 3.10 of the charter

concerns legislative acts, such as voting on motions, enacting ordinances, veto procedures and formation of procedural rules. Section 3.10(a), which contains the specific language CSI cites, deals with the regular monthly and special meetings of the City council. Read in this context, it appears that the language set forth in section 3.10(a) requiring the council to hold an open meeting in order for the action taken to have "legal effect" was intended to apply to acts that are legislative in nature *Cf. Kinder v. Holden,* 92 S.W.3d 793, 806 (describing executive orders that constitute communications to subordinate executive branch officials regarding the execution of their executive branch duties as not being legally enforceable and distinguishing them from executive orders that implement or supplement the state's constitution or statutes and which have the force of law).

Here, the council and the mayor held a discussion, during which they authorized the city administrator to revoke the contract with CSI. Rather than a legislative act intended to have "legal effect," the authorization was a mere expression of the council's opinion concerning a matter of administration coming within its official cognizance—namely, whether the city administrator has authorization to perform a certain act on behalf of the City. Neither the charter nor Missouri State law requires legislative action to grant the city administrator authority to revoke a contract offer on behalf of the City. If we were to agree with CSI's interpretation of the provision as barring closed meeting discussions between the council and the mayor whenever a non-legislative decision is made, then the City council would be unable to discuss other confidential matters—such as personnel and legal issues—in private. Because we presume that the enacting body intended a logical result

when it enacted the City's charter, we disagree with CSI's interpretation of section 3.10(a) as requiring an open meeting under these circumstances. Accordingly, because the discussion authorizing the city administrator to revoke the offer was not intended to have legal effect, the city council was entitled to hold the discussion in a closed meeting.

CSI also argues that the City bears the burden of proving its compliance with the requirements of the Missouri Sunshine Law, which was interposed as an affirmative defense. But this presupposes that CSI has sought judicial enforcement of that law. The government's burden to demonstrate compliance with the Sunshine Law is only triggered "[o]nce a party seeking judicial enforcement of sections 610.010 to 610.026 demonstrates to the court that the body in question is subject to the requirements of [the Sunshine Law] and has held a closed meeting, record or vote...." Section 610.027.2. CSI did not seek such a determination in the trial court. Neither its original petition nor its reply to the City's counterclaim even mentions the Sunshine Law, much less invokes judicial enforcement of its provisions or the charter and the underlying policy concerning open meetings.[2]

Point denied.

## C. Significance of Letter

■ CSI argues in its final point that the trial court erred in granting summary judgment to the City because, even if the offer was properly revoked, the City never revoked the letter executed after the parties' meeting. CSI argues the letter was a separate agreement binding the City. It further argues that the case should be

remanded because a genuine issue of fact exists relating to the enforceability of the letter. We disagree.

Without more, the letter cannot be considered an enforceable contract for the sale of real estate. It lacks virtually all of the requirements for a valid contract for the sale of real estate, including identification of the land, price and the date of closing. *Cf. In re Estate of Looney*, 975 S.W.2d 508, 515 (Mo.App. S.D.1998) (essential terms of a contract for the sale of real estate are the parties, the subject matter, the consideration, the price, and promises upon both sides). Also, it clearly refers to another document as the offer and to the possibility that the offer may be re-evaluated by the parties. The letter states that it merely serves as "confirmation of the understanding reached" at the meeting concerning the execution and closing of the purchase and sale agreement. Even if the City was bound by the terms of the letter, it was not required to keep its offer open until August 1st, as contemplated by that letter, because it was not an option contract supported by consideration. *See, e.g., I.R. Kirk Farms, Inc. v. Pointer*, 897 S.W.2d 183, 185 (Mo.App. W.D.1995) (offeror free to revoke offer at any time by communicating to offeree prior to acceptance unless the offer is supported by consideration making the offer irrevocable).

CSI points to the testimony of the city administrator in arguing that the modification of the original offer was an entirely appropriate administrative exercise pursuing the plan already adopted by the legislative body itself. However, it is clear from our analysis of the first point on appeal that only the mayor, and not the

---

**2.** While CSI's summary judgment refers to the alleged violation of the City charter, it did not seek enforcement of the Sunshine Law. Rather, in requesting specific performance,

CSI only claimed that the closed meeting did not grant authority to the city administrator nor repeal the ordinance.

city administrator, has the authority to sign a contract for the sale of real estate and bind the City, even if the city administrator had the authority to negotiate the terms of the deal. There is no indication that the city administrator was authorized, in writing or otherwise, to sign any document for the purpose of executing a land sale contract, as required under section 432.070.

Point denied.

### III. CONCLUSION

The judgment is affirmed.

LAWRENCE E. MOONEY, J. and BOOKER T. SHAW, J. concurring.